UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MATTHIAS FRANCOIS & OBADIAH FRANCOIS | CIVIL ACTION |
| VERSUS | NO. 16-14646 c/w 16-14803, 16-14878 |
| CITY OF GRETNA | SECTION A(3) |

## ORDER AND REASONS

The following motions are before the Court: **Motion to Dismiss Based on Prescription (Rec. Doc. 29), Motion to Dismiss For Failure to State a Claim or Alternatively Qualified Immunity (Rec. Doc. 30), Motion for Summary Judgment Based on *Heck* (Rec. Doc. 31)** filed by the City of Gretna. Plaintiff Matthias Francois has filed a response in opposition (Rec. Doc. 35). The motions, submitted to the Court on February 21, 2018, are before the Court on the briefs without oral argument.[1]

According to the City of Gretna ("Gretna"), these three consolidated cases involve the same claims that were previously presented in Civil Action 13-2640, which this Court dismissed without prejudice in open court on February 17, 2016, due to Plaintiffs' failure to prosecute.[2]

---

[1] The plaintiffs are brothers who are proceeding pro se. The motions were originally noticed for submission on January 24, 2018. Matthias Francois filed a motion requesting an extension of time to oppose the motions (Rec. Doc. 32). In light of Plaintiffs' pro se status, the Court reset all of the motions (including the one filed against Obadiah alone) for submission on February 21, 2018 so that Plaintiffs would have ample time to file their oppositions. (Rec. Doc. 33). The response in opposition (Rec. Doc. 35) was filed by Matthias Francois and is not signed by Obadiah Francois. Matthias Francois is not an attorney and therefore cannot represent his brother in this lawsuit. The Court has considered the merits of Gretna's arguments without penalizing Obadiah for failing to file an opposition.

[2] United States District Judge Helen Ginger Berrigan presided over Civil Action 13-2640 from May 7, 2013, until January 5, 2016, when Chief Judge Engelhardt temporarily reassigned the case to this Court (CA13-2640, Rec. Doc. 113). On January 7, 2016, which was two months before the scheduled trial, Plaintiffs filed a "Notice to the Court" advising that they would no longer participate in the case because of the prejudice and discrimination that had been directed at them by the presiding judge during the course of

(CA13-2640, Rec. Doc. 130). According to Gretna, all of the actions arise out of the same operative facts that occurred on October 24, 2012, when officers of the Gretna Police Department arrested Obadiah and Matthias Francois and seized their cell phones. The claims asserted pursuant to 42 U.S.C. § 1983 are for Fourth Amendment violations (arrest without probable cause and seizure of the cell phones), and for Sixth Amendment violations involving the right to counsel, and due process violations. Matthias's complaint quantifies the damages sustained at $45 million dollars (exclusive of punitive damages).

A jury trial is scheduled for March 19, 2018. The Court cancelled the pretrial conference when it continued the submission date on Gretna's motions in order to accommodate the request for additional time to oppose the motions. (Rec. Doc. 33).

According to Gretna, the general underlying facts of the case are as follows:[3] On October 24, 2012, the Gretna Police Department received a 9-1-1 call advising that two black males, wearing all black clothing, were selling illegal narcotics in the 300 block of 5th Street in Gretna. Upon arriving at the scene, Gretna police officer Jerry Broome observed two black males (later identified as Matthias and Obadiah) wearing all black clothing. (Rec. Doc. 30-3, Broome affidavit). One of the males made gestures and actions as if to flee. The other reached into his waistband

---

the litigation. (Rec. Doc. 118). On February 12, 2016, the Court issued an order setting a status conference in open court for February 18, 2016, and ordered both plaintiffs to appear in person. (Rec. Doc. 128). Neither plaintiff appeared and the Court dismissed the action without prejudice for failure to prosecute. (Rec. Doc. 130). Plaintiffs appealed that ruling and on August 31,2016, the Fifth Circuit affirmed. (Rec. Doc. 140).

[3] The Court several times refers to the background above as "According to Gretna," because the plaintiffs' complaints comprise a total of 85 pages, which at times do not present a cogent narrative of the nature of the claims. Naturally, the Court will construe plaintiffs' documents liberally to do substantial justice, *Erickson v. Pardus*, 551 U.S. 89 (2007), but the Court cannot advocate for the plaintiffs. So far as the Court can tell, and mindful that any disputed issues of fact must be construed in Plaintiffs' favor, Gretna's description of the underlying claims comports with the pleadings and neither plaintiff has objected to Gretna's characterization of the claims.

as if reaching for a gun and then removed his hand and made it into a fake gun using his index finger and thumb. (*Id.*). Based on these actions, both subjects were handcuffed and detained. The two subjects then admitted to Broome that they had placed the 9-1-1 call themselves. The cell phones were found during a search incident to arrest and Broome seized them as evidence of the crime.[4] (*Id.*).

Obadiah pleaded guilty to two counts of public intimidation and one count of false swearing in conjunction with the October 24, 2012 incident. (Rec. Doc. 30-4). During the plea colloquy, Obadiah admitted to making the 9-1-1 call that led to his arrest; he denied that his brother had made the call. Obadiah characterized the 9-1-1 call as a "misunderstanding."[5]

Matthias has no criminal convictions resulting from the October 24, 2012 incident.[6]

The only defendant named in each complaint filed in these consolidated cases is Gretna. As to both Obadiah and Matthias, Gretna moves for dismissal for failure to state a claim/summary judgment based upon the contention that the pleadings and evidence fail to

---

[4] Broome stated that after being arrested and Mirandized, Matthias laughed about the 9-1-1 call and claimed that he made the call himself. (Rec. Doc. 30-3, Broome affidavit). But Obadiah claimed that it was his idea. At some point after the arrest both Matthias and Obadiah told Broome that they wished to be killed by the police, and that they have mental problems. (*Id.*). This aspect of Plaintiffs' post-arrest statements is consistent with statements made to Gretna Police Detective Alfred Disler. (Rec. Doc. 30-3, Disler affidavit).

[5] During that same appearance, Obadiah also pleaded guilty to three other counts of public intimidation which were not related to the October 24, 2012 incident. The conduct leading to the two counts of public intimidation related to the October 24, 2012 incident occurred at the police station and was directed at police officers.

[6] On the same day that Obadiah pleaded guilty to the charges related to the October 24, 2012 incident, Matthias appeared in court to plead guilty to one count of public intimidation directed at Judge Roy Cascio that occurred on February 26, 2014, while in court. (Rec. Doc. 30-4 at 31-32). Both brothers received five year sentences.

support a claim for municipal liability under § 1983.[7] As to Obadiah, Gretna moves for dismissal based upon the bar to litigation recognized in *Heck v. Humphrey*, 512 U.S. 477 (1994).[8]

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the

---

[7] In this motion Gretna also purports to raise the defense of qualified immunity while expressly acknowledging that the defense is not available to a municipality. Gretna explains that it did so in the event that the Court should enlarge the pleadings to include claims against the individual officers. (Rec. Doc. 30-1 at 14 n.15). While the Court agrees that the individual officers would likely be entitled to qualified immunity if they were parties to this lawsuit, it remains that they are not parties so the Court cannot adjudicate a defense in their favor. This issue is moot nonetheless because the Court is not enlarging the pleadings to join any additional parties.

[8] Gretna's third potentially dispositive motion is based on prescription. Gretna contends that Plaintiffs' claims are untimely because the filing of matter 13-2640, which was filed within one year of the October 24, 2012 incident, did not interrupt prescription because the suit was dismissed by the Court for failure to prosecute. According to Gretna, La. Civ. Code art 3463 dictates that when a lawsuit is dismissed for failure to prosecute, it does not interrupt prescription. Gretna's position is therefore that the claims in these consolidated actions are untimely even though they were filed within one year of the dismissal in Civil Action 13-2640.

Because Gretna's other two motions are meritorious and will result in a dismissal of all federal claims with prejudice, the Court declines to rule on the prescription issue, which may not be as straightforward as it seems at first blush. It is correct that Louisiana's delictual prescriptive period and the associated tolling provisions apply to Plaintiffs' § 1983 claims. *See Bd. of Regents v. Tomanio*, 446 U.S. 478 (1980). But Article 3463 states that "[i]nterruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses the action at any time . . . or fails to prosecute the suit **at the trial**." (emphasis added). Abandonment, which is a creature of the Louisiana Code of Civil Procedure, is not applicable, and the "Notice to the Court" advising that Plaintiffs would no longer participate in the 2013 case, was not adjudicated as a voluntarily dismissal. Rather, the Court dismissed Civil Action 13-2640 *involuntarily* as a sanction for Plaintiffs' failure to obey the Court's order to appear at the status conference set for February 18, 2016. While the Court did include in its minute entry the statement that the dismissal was based on the failure to prosecute, what occurred on February 18, 2016 is not the same as failing to prosecute the suit *at the trial*, which is expressly what the code article requires. This interpretation of the prior dismissal is consistent with the Court's express order that the dismissal was to be *without* prejudice.

non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

As to both Obadiah and Matthias, Gretna is entitled to judgment as a matter of law on the claim for municipal liability under § 1983. Municipal liability for § 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations. *Id.* But a policy may also be evidenced by custom, that is a persistent, widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy. *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). Actions of officers or employees of a municipality do not render the municipality liable under section 1983 unless they execute official policy as defined above. *Id.* Thus, municipal liability under §1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A municipality is not liable based on the theory of respondeat superior. *Id.* (citing *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).

At the outset, the Court notes that the first problem with Plaintiffs' claims for constitutional violations arising out of the October 24, 2012 incident is that all of the evidence suggests that both of them were arrested (and had their phones seized) based on probable cause to believe that they had committed a crime related to the false 9-1-1 call. That the charges were eventually dismissed as to Matthias is irrelevant to the question of whether he was arrested based on probable cause. Officer Broome's statements regarding the arrests are undisputed in the record. The officer's statements regarding Plaintiffs' conduct at the scene of the arrest is corroborated by a witness. (Rec. Doc. 30-3, Dazet declaration).

But even assuming that one or both of the plaintiffs was arrested without probable cause, there is no evidence in the record to suggest that any policy by Gretna caused the arrests. Matthias included a statement in his complaint to the effect that Gretna has a de facto policy of unlawfully arresting individuals who have previously filed suit against the municipality for misconduct. (16-14878, Rec. Doc. 1 at 1-2). This unsupported statement does not withstand scrutiny under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and Matthias offers no evidence to create an issue of fact regarding such a policy. As to Obadiah, the "policies" that he recites in his complaint are municipal criminal ordinances that have nothing to do with a policy that would "cause" an arrest without probable cause. Gretna is therefore entitled to summary judgment on all federal claims pertaining to the October 24, 2012 incident.[9]

Although a moot issue, Gretna is also correct in that all of Obadiah's claims are subject to the bar presented by *Heck v. Humphrey,* 512 U.S. 477 (1994). It is well-settled under *Heck* that a

---

[9] Both plaintiffs include a claim in their current pleadings to the effect that the inadequate indigent defense system in Gretna resulted in a violation of their Sixth Amendment rights. This claim, which does not appear to have been asserted in the 2013 litigation--litigation that may or may not have interrupted prescription as to the October 24, 2012 incident—is clearly prescribed. All criminal proceedings in conjunction with the October 24, 2012 incident were concluded well over a year before Plaintiffs filed suit in September 2016.

plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights in conjunction with that crime unless he proves that the conviction has been set aside. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008). Obadiah's conviction for false swearing arises from the same October 24, 2012 arrest upon which his civil claims are based. The § 1983 claims premised on Fourth Amendment violations conflict with that extant conviction. *Heck* therefore bars Obadiah's claims.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss For Failure to State a Claim or Alternatively Qualified Immunity (Rec. Doc. 30)** and the **Motion for Summary Judgment Based on *Heck* (Rec. Doc. 31)** filed by the City of Gretna are **GRANTED** as explained above. All federal claims asserted in these consolidated actions are **DISMISSED WITH PREJUDICE**. To the extent that any state law claims are pleaded, the Court declines to exercise jurisdiction over those claims and they are **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that the **Motion to Dismiss Based on Prescription (Rec. Doc. 29)** is **MOOT**.

February 23, 2018

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE